UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASMINDER SINGH, | Civil Action No. 24-7641 (RMB-EAP) |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| RACHEL THOMPSON, et al., | |
| Defendants. | |

**IT APPEARING THAT:**

1. On or about July 9, 2024, Plaintiff Jasminder Singh, a prisoner incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed this *pro se* civil rights complaint under the Religious Freedom Restoration Act ("RFRA") 42 U.S.C. § 2000bb *et seq.*; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and federal question jurisdiction, 28 U.S.C. § 1331, seeking damages, injunctive and declaratory relief, and mandamus relief.[1] Compl., Dkt. 1. This Court administratively terminated the action because Plaintiff's IFP

---

[1] Mandamus relief is an extreme remedy only for extraordinary circumstances. *In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024). It permits a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Plaintiff has other remedies available to him under RFRA and equitable relief under 28 U.S.C. § 1331. Therefore, mandamus relief is unavailable here.

1

application was not properly completed pursuant to 28 U.S.C. § 1915(a).  Order, Dkt. 2.

2. On July 26, 2024, Plaintiff submitted a new IFP application, Dkt. 4.  This application will be granted because it establishes Plaintiff's financial eligibility to proceed without prepayment of the filing fee.

3. When a plaintiff is granted IFP status, the district court is required to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

4. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

5. Plaintiff brings his claims against the following FCI Fort Dix officials and employees:  Warden Rachel Thompson, Supervisory Chaplain Gates, Chaplain Friday, Unit Manager Jennifer Ordonez, Lieutenant ("Lt.") Siclari, Correctional

Officer ("CO") Oyola, CO Cadet, CO J. Harris, CO J. Owens, CO Nixon, CO Officer G. Nazario, Food Service Supervisor Marchese, Lt. Gafni, Lt. Johnson, Lt. White, CO Suero and CO White.

6. In Count One of the complaint, Plaintiff asserts Defendants violated RFRA, 42 U.S.C. § 2000bb *et seq.*, by denying him a religious diet. Compl. ¶¶ 56-60, Dkt. 1.

7. In Count Two, Plaintiff alleges Defendants violated his right to free exercise of religion under the First Amendment. He is of the Amritdhari Sikh faith, and his faith does not allow him to eat food cooked in pots used to prepare meat, fish or seafood. He was denied a religious diet since his arrival at FCI Fort Dix on January 3, 2023. *Id.* at ¶¶ 61-70.

8. In Count Three, Plaintiff alleges Defendants retaliated against him because he pursued accommodations based on his sincerely held religious beliefs. Plaintiff brings this claim under RFRA, 42 U.S.C. § 20000bb *et seq. Id.* at ¶¶ 71-73.

9. "To establish a prima facie case under RFRA, [a plaintiff] must allege that the government (1) substantially burdened (2) a sincere (3) religious exercise." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016) ("*Mack II*");[2] 42 U.S.C. § 2000bb-1(b)(1–2). A defendant is not liable if the burden on a plaintiff's religious exercise was "in furtherance of a compelling governmental interest" and "is the least

---

[2] The Third Circuit issued opinions in *Mack v. Yost* on three occasions: ("*Mack I*"), 427 F. App'x 70, 71 (3d Cir. 2011); (*Mack II*), 839 F.3d 286 (3d Cir. 2016); and ("*Mack III*"), 968 F.3d 311 (3d Cir. 2020).

3

restrictive means of furthering that ... interest." *Id.* "RFRA permits suits against individual officers for their ultra vires acts." *Mack*, 839 F.3d 301.

10. Whether government conduct constitutes a substantial burden on exercise of religion is a question of law, determined under an objective standard. *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 356 (3d Cir. 2017) (cleaned up). "'[B]urdens on religious exercise need not be intentional … to be actionable under the RFRA." *Mack I*, 839 F.3d at 305. "[A] burden can be 'substantial,' … 'even if it involves indirect coercion to betray one's religious beliefs.'" *Mack III*, 63 F.4th at 220 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). There is no substantial burden, however, if:

> the governmental action does not coerce the individuals to violate their religious beliefs or deny them the "rights, benefits, and privileges enjoyed by other citizens"—even if "the challenged Government action would interfere significantly with private persons' ability to pursue spiritual fulfillment according to their own religious beliefs." *Lyng* [v. *Nw. Indian Cemetery Protective Ass'n*], 485 U.S. [439,] 449, 108 S.Ct. 1319 [1988].

*Real Alternatives, Inc.*, 867 F.3d at 357. A prisoner's religious belief is violated where he "is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates." *Mack II*, 839 F.3d at 304.

11. Plaintiff alleges the following facts concerning his request for a religious diet at FCI Fort Dix. Plaintiff arrived at FCI Fort Dix as an inmate on January 2, 2023. Compl. ¶ 27, Dkt. 1. In advance of his arrival, the Sikh American Legal Defendant Fund ("SALDEF") advised Chaplain Services at FCI Fort Dix that

Plaintiff would be hand carrying his religious materials with him. *Id.* Chaplain Jenkins told the on-duty CO that Plaintiff could have his turban and other articles of faith, which his religion required him to carry, with the exception of his steel bracelet and ceremonial blade. *Id.* Plaintiff was traumatized by the removal and destruction of his bracelet. *Id.*[3]

12. Five days later, Plaintiff went to see Chaplain Gates. *Id.* ¶ 29. Gates acknowledged receiving information about Plaintiff's religious diet from SALDEF and Plaintiff's sister. *Id.* Plaintiff's faith requires a vegetarian and dairy diet, and it precludes eating food prepared in pots used to cook meat, seafood or fish. Compl. ¶ 29, Dkt. 1. Gates informed Plaintiff he would get back to him about his diet request the following week. *Id.*

12. On February 17, 2023, Chaplain Friday informed Plaintiff no action had been taken on his dietary request. Compl. ¶ 30. Friday recommended Plaintiff take a "cop out" [request] to the Food Service Department. *Id.* Food Service Supervisor Marchese was not in, so Plaintiff left the request for him. *Id.*[4] On March 25, 2023, Plaintiff reminded Chaplain Friday his religious dietary needs were still unmet. *Id.* ¶ 34. Friday told Plaintiff to return in the afternoon to speak to Gates. *Id.* At first, Gates told Plaintiff to prove his faith did not allow him to eat from the same tray as

---

[3] Plaintiff did not assert claims against any specific defendant for removal of his bracelet.

[4] This is Plaintiff's only allegation pertaining to Marchese, which is insufficient to establish Marchese's conduct substantially burdened Plaintiff's exercise of religion. The RFRA claim against Marchese will be dismissed without prejudice.

5

those who eat meat, but Gates did not wait for a response and said, "This is not happening. I have made myself clear." Compl. ¶ 34, Dkt. 1.

13. On May 9, 2023, Plaintiff again requested Gates approve his religious diet and followed up with an email. *Id.* at ¶ 39. On August 6, 2023, Plaintiff sent a detailed letter about his religious concerns to Warden Cruz, a former warden at FCI Fort Dix, without receiving a response. *Id.* at ¶ 41. Plaintiff informed Gates that his religious dietary needs had not been met as of August 17, 2023. *Id.* at ¶ 43. Plaintiff complained he was losing weight and the lack of his religious diet was affecting his physical and mental health. *Id.* Gates told Plaintiff he thought Plaintiff was getting his religious diet. *Id.* Then he offered to place Plaintiff on a Kosher food diet, but to do so, he would have to change Plaintiff's religion to "Jewish" in the SENTRY computer system. *Id.* This was blasphemous to Plaintiff, and he declined. *Id.* As of August 23, 2023, Plaintiff had lost 31 pounds due to the lack of his religious diet. *Id.* at ¶ 44.

14. On February 1, 2024, Plaintiff wrote a detailed letter to Warden Rachel Thompson, voicing concerns that he was suffering religious discrimination and harassment. *Id.* at ¶ 45. On February 10 and February 18, 2024, he sent Thompson letters "regarding the ongoing incidents against him" which were continuing without mitigation. *Id.* at ¶¶ 46, 47. He also wrote letters to Thompson to complain about specific incidents when they occurred. *See, e.g.*, Compl. ¶¶ 51, 52. On April 19,

2024, he wrote to Thompson again "regarding the ongoing incidents he was suffering" without a response. *Id.* at ¶ 49.

15. Plaintiff's RFRA claim for denial of his religious diet in Count One may proceed against Chaplain Gates. Plaintiff fails to allege sufficient facts to state a plausible claim that Warden Thompson was personally involved in denying Plaintiff his religious diet. *Ortiz v. Messinger*, No. 1:23-CV-00315, 2024 WL 1285536, at *11 (M.D. Pa. Mar. 26, 2024) (collecting cases requiring a supervisor's personal involvement in a RFRA violation). Dismissal of this RFRA claim against Warden Thompson will be without prejudice. If Plaintiff can allege additional facts showing there was a policy or practice for the warden to read and respond to letters from inmates, he can reassert his claim in an amended complaint.

16. Plaintiff has not alleged facts indicating conduct by any other defendant substantially burdened his religion by denying his religious diet. The RFRA claims in Count One will be dismissed without prejudice as to the remaining defendants.

16. Count Two of the complaint relies on the same allegations as Count One. Plaintiff seeks to hold Defendants liable for money damages under *Bivens* for violating his First Amendment Right to free exercise of his religion by denying his religious diet. The Third Circuit has declined to recognize a First Amendment Free Exercise claim for monetary damages under *Bivens*, in part, because there is no need to imply a damages remedy where RFRA provides for such relief. *Mack II*, 839 F.3d at 305 ("RFRA provides claimants with 'all appropriate relief….'" Therefore, the

Court will dismiss with prejudice the *Bivens* claims for monetary damages in Count Two.

17. Under federal question jurisdiction, 28 U.S.C. § 1331, Plaintiff seeks injunctive relief in Count Two.[5] Plaintiff must first establish a sincerely held religious belief. *See DeHart v. Horn*, 227 F.3d 47, 52 (3d Cir. 2000) ("[I]f a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request.") Plaintiff alleged a plausible claim of his sincerely held religious belief in a vegetarian and dairy diet, which may not be prepared in pots used to cook meat, seafood or fish. The First Amendment is not violated if there is "a legitimate and reasonably exercised state interest" which "outweighs the proffered [F]irst [A]mendment claim." *Id.* (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir. 1981)). It is at least plausible that prison officials can provide Plaintiff his religious diet. The proper defendant for this claim for equitable relief is "the official within the entity who can appropriately respond to injunctive relief.'" *Mitchell v. Jones*, No. 1:21-CV-00131-SPB-RAL, 2022 WL 2657365, at *6 (W.D. Pa. Mar. 9, 2022), *report and recommendation adopted*, No. 1:21-CV-131, 2022 WL 2063256 (W.D. Pa. June 8, 2022) (quoting *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)). This claim for equitable relief may proceed against Warden Thompson. If, however, Warden

---

[5] Plaintiff seeks an order "restraining and enjoining Defendants from denying Plaintiff's request for a religious diet, and from taking any other adverse action against Singh based on his sincerely held religious beliefs." Compl. at 11, Dkt. 1.

Thompson is no longer the official who can provide Plaintiff the diet he seeks, Plaintiff must identify the proper defendant in an amended complaint.

18. Plaintiff also seeks declaratory judgment under 28 U.S.C. § 2201 on his First Amendment Free Exercise claim. The declaration he seeks is "Defendants violated Singh's rights under the First Amendment to the free exercise of religion." Compl. at 11, Dkt. 1. Declaratory judgment is not meant to adjudicate past conduct or proclaim one party is liable to another. *Corliss v. O'Brien*, 200 F. App'x 80, 84–85 (3d Cir. 2006). Therefore, Plaintiff may not seek a declaration that his constitutional rights were violated.

19. The remaining claims in the complaint fall under Count Three, which Plaintiff frames as a retaliation claim under RFRA, 42 U.S.C. § 20000bb *et seq.* As discussed above, for a cognizable RFRA claim, a plaintiff must allege the defendant's conduct substantially burdened his sincere religious exercise. Plaintiff alleges that during a standard room inspection, Unit Manager Ordonez discovered some of Plaintiff's hair in a plastic bag and told him to throw it out. Compl. ¶ 31, Dkt. 1. Plaintiff explained he is Sikh and it is his religious hair. *Id.* Ordonez said "[t]hat's gross" but did not make him dispose of it. Plaintiff fails to state a RFRA claim against Ordonez because he failed to allege how this conduct by Ordonez caused him to forego his religious exercise or denied him a right, benefit or privilege enjoyed by other inmates.

20. Relatedly, Plaintiff alleges Chaplain Friday threatened him with retribution, to be carried out by inmates, if he filed a grievance about Unit Manager

Ordonez's remark about his religious hair.  Compl. ¶ 33, Dkt. 1.  Out of fear staff would direct inmates to target Plaintiff with violence, Plaintiff did not file the grievance.  *Id.*  Plaintiff alleges a plausible RFRA claim that he was denied the benefit of filing a grievance based on his religion.  This RFRA claim may proceed against Chaplain Friday.

17. Plaintiff's only allegation against Lt. Siclari is that Siclari approached Plaintiff, grabbed for his turban, and accused him of taking it from the Segregated Housing Unit ("SHU".)  Compl. ¶ 36, Dkt. 1.  Siclari did not believe Plaintiff brought a turban to FCI Fort Dix with him.  *Id.*  Later that day, Plaintiff explained to the assistant warden that he had been authorized to wear the turban.  *Id.* at ¶ 37.  Plaintiff does not allege he was denied the right to wear his turban or that he was coerced to stop wearing his turban due to Lt. Siclari's conduct.  Therefore, this RFRA claim will be dismissed without prejudice.

18. During an inspection on June 5, 2023, Plaintiff alleges CO Oyola asked what was on his head, when Plaintiff answered, she said "I have never seen this sh*t before."  *Id.* at ¶ 52.  She also called him an "a**hole."  *Id.*  Later, Plaintiff was told to report to Co Gonzalez's office.  *Id.*  When he arrived, CO Oyola apologized because she had confirmed his turban was religious.  *Id.*  She asked Plaintiff "[d]o we understand each other?"  *Id.*  Plaintiff does not allege he quit wearing his turban as a result of Oyola's conduct.  Therefore, this RFRA claim will be dismissed without prejudice.

19. Plaintiff complained when CO Cadet, who was conducting a search of Plaintiff's locker, touched his religious items without washing his hands or wearing gloves. Compl. ¶ 53, Dkt. 1. Plaintiff alleges Cadet responded by writing three false incident reports against Plaintiff. *Id.* Cadet confiscated Plaintiff's religious notes, claiming they were terroristic, and alleged his hair band was a weapon. Compl. ¶ 53, Dkt. 1. He threatened Plaintiff with time in the SHU and said, "I am the last one you want to mess with here." *Id.* This RFRA claim may proceed against CO Cadet for confiscation of Plaintiff's religious items, subject to the defense of a compelling government interest in Cadet's conduct.

20. CO Owens allegedly called Plaintiff's turban a doo-rag, but she confirmed it was a religious turban and did not confiscate it. *Id.* at ¶ 35. CO Johnson also called Plaintiff's turban a doo-rag. *Id.* at ¶ 51. CO Nazario told Plaintiff his turban was a "cap," and it was not religious. *Id.* at ¶ 50. Plaintiff does not allege he was coerced into not wearing his turban. These RFRA claims fail to allege a substantial burden on Plaintiff's exercise of his religion and will be dismissed without prejudice.

21. Plaintiff was insulted when Chaplain Gates offered to let him wash his turban in a private area of the chapel because the sink was used to clean bathroom mops. *Id.* at ¶ 38. Plaintiff, however, did not allege he was not provided an alternative place to wash his turban. This RFRA claim will be dismissed without prejudice.

22. Plaintiff has not alleged what actions taken by CO Nixon, CO J. Harris, CO Rolon, Lt. Gafni, Lt. White or CO Suero substantially burdened Plaintiff's exercise of his religion. These RFRA claims will be dismissed without prejudice.

23. The Court construes Plaintiff to allege, in Count Three, that Warden Thompson substantially burdened his exercise of religion by ignoring his detailed written complaints about religious harassment. Plaintiff alleges religious harassment by FCI Fort Dix staff deprived him of countless hours of meditation on oneness with God, the core of his faith. Compl. at ¶ 55, Dkt. 1. The Court notes, however, that Plaintiff does not allege any instances where he was meditating when a defendant interrupted and harassed him. Likewise, Plaintiff did not allege any defendant's involvement in ignoring Sikh holy days. *Id.* Moreover, to hold Thompson liable for placing a substantial burden on Plaintiff's free exercise of religion by allowing his religious harassment to continue, he must plead additional facts to plausibly infer Thompson received and read the letters or was required to do so. This RFRA claim will be dismissed without prejudice.

24. For these reasons, the complaint will be dismissed in part and may proceed in part.

An appropriate Order follows.

DATE:  November 18, 2024                    s/Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            United States District Judge